# Composite
# EXHIBIT "C"



**ORDERED in the Southern District of Florida on December 19, 2014.**

Paul G. Hyman, Jr.
**Chief United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION

In re:                                            CASE NO.: 11-34324-BKC-PGH

David A. Failla and                    CHAPTER 7
Donna N. Failla,

     Debtor(s).                    /

## <u>ORDER GRANTING CITIBANK'S AMENDED MOTION TO COMPEL DEBTORS TO SURRENDER REAL PROPERTY PURSUANT TO STATEMENT OF INTENTION</u>

**THIS MATTER** came before the Court for upon the _Amended Motion to Compel Debtors to Surrender Real Property Pursuant to Statement of Intention and Incorporated Memorandum of Law_ (the "Motion to Compel Surrender") (ECF No. 40) filed by CitiBank, N.A. as Trustee for the Certificate Holders of Structured Asset Mortgage Investments II Inc., Bear Stearns Alt-A Trust, Mortgage Pass-Through Certificate Series 2006-7 ("CitiBank") against David A. Failla and Donna N. Failla

1

(the "Debtors"). The Court took the matter under advisement at a hearing on October 7, 2014. Thereafter, the parties submitted a *Stipulation of Facts and Statement of Legal Issues for Ruling on Motion to Compel Debtors to Surrender Real Property* (the "J. Stip." or the "Joint Stipulation") (ECF No. 78).[1] For the reasons discussed below, the Court grants CitiBank's Motion to Compel Surrender.

## FACTS

The following facts are undisputed. The Debtors own real property located at 1498 SW 19th Street, Boca Raton, Florida 33486 (the "Property"). J. Stip. at ¶ 3. On August 25, 2006, David A. Failla obtained a loan (the "Loan") from HomeBanc Mortgage Corporation, and in connection therewith executed a promissory note (the "Note") payable to HomeBanc Mortgage Corporation in the principal amount of $500,000.00. *Id.* at ¶ 4. As security for the Loan, the Debtors executed a mortgage (the "Mortgage") on August 25, 2006, pledging the Property as collateral. *Id.* at ¶ 5. The Mortgage was recorded on September 12, 2006, in Official Records Book 20836, Page 0544 et al. of the Official Records of Palm Beach County, Florida. *Id.* at ¶ 6.[2]

Subsequently, the Debtors defaulted under the Note and Mortgage. *Id.* at ¶ 7. On July 7, 2009, CitiBank filed a complaint to foreclose the Mortgage and re-establish

---

[1] On December 5, 2014, the Debtors filed their *Brief in Opposition to Creditor CitiBank B.A., As Trustee, Etc. Motion to Compel Surrender of Real Property* (ECF No. 81) and CitiBank filed its *Memorandum of Law in Support of Motion to Compel Surrender of Real Property* (ECF No. 82). Thereafter, on December 12, 2014, the Debtors filed their *Reply Law Memorandum* (ECF No. 84) and CitiBank filed its *Reply to Debtors' Brief in Opposition to Motion to Compel Surrender of Real Property* (ECF No. 85).

[2] The parties attached copies of the Note and Mortgage to the Joint Stipulation as Exhibit A.

the Note in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida (the "State Court"). *Id.*

Thereafter, on August 31, 2011, the Debtors filed their *Chapter 7 Voluntary Petition* (ECF No. 1). On the same day, the Debtors filed their Schedules A through J (the "Schedules"), in which the Debtors made declarations concerning the Property and the Mortgage under penalty of perjury. The Debtors stated that they own the Property, the Property is encumbered by the Mortgage, and the Mortgage is a valid first mortgage lien on the Property and represents a non-contingent, liquidated, and undisputed secured claim against the Debtors and the Property. The Debtors declared that the amount they owe pursuant to the Loan exceeds the value of the Property. On September 2, 2011, the Debtors filed their *Statement of Intention* (ECF No. 8), in which they declared under penalty of perjury their intention to surrender the Property pursuant to 11 U.S.C. § 521(a)(2)(A). Nevertheless, on October 14, 2011, the Debtors attempted to amend their Statement of Intention to instead declare an intention to reaffirm the Mortgage and Loan. *See Amended Document* (ECF No. 14). The amendment, however, was untimely and invalid under applicable law, and therefore, did not result in the amendment of the original Statement of Intention. J. Stip. at ¶ 15.

On December 16, 2011, the Court issued the *Order Discharging Debtor(s)* (ECF No. 23) and on December 19, 2011, the Clerk of the Court closed the Debtors' case. *See Final Decree and Discharge of Trustee* (ECF No. 25). Subsequently, the State

Court set a non-jury trial for August 21, 2013, regarding the Property. J. Stip. at ¶ 17. As of December 1, 2014, and since September 2, 2011, the Debtors have retained possession and title to the Property, and oppose CitiBank's action to foreclose on the Mortgage in the State Court. *Id.* at ¶ 18.

## CONCLUSIONS OF LAW

### I.  Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. §§ 157(a)(2)(A) and (O).

### II.  The Debtors Must Surrender the Property

The parties agree that there are no factual disputes for the Court to determine in ruling on the Motion to Compel Surrender, and that the only issues left to decide are the following purely legal issues: (1) What actions or inactions, if any, are required of the Debtors to effectively and sufficiently perform their Statement of Intention to surrender the Property?; (2) What remedies or rights are available to CitiBank for the Debtors' failure to comply with their obligation to perform their Statement of Intention to surrender the Property?; and (3) Does the "exception" language of 11 USC § 521(a)(2)(B)—which states that "except that nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title, except as provided in section 362 (h)"—implicitly permit a debtor to lawfully defend a foreclosure action as a matter of "right" of such property ownership?

When a debtor files for bankruptcy, the debtor must state her intention to surrender, reaffirm, or redeem property in which a creditor has a secured interest. The Bankruptcy Code provides:

> (a) The debtor shall—
>
> . . .
>
>> (2) if an individual debtor's schedule of assets and liabilities includes debts which are secured by property of the estate—
>>> (A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property; and
>>> (B) within 30 days after the first date set for the meeting of creditors under section 341(a), or within such additional time as the court, for cause, within such 30-day period fixes, perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph; except that nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title, except as provided in section 362(h)

11 U.S.C. § 521.

"In many jurisdictions, including the Eleventh Circuit, if the debtor chooses to retain nonexempt collateral under § 521(a)(2), he only has two options: reaffirmation or redemption." *In re Plummer*, 513 B.R. 135, 141 (Bankr. M.D. Fla. 2014) (*citing Taylor v. AGE Fed. Credit Union (In re Taylor)*, 3 F.3d 1512 (11th Cir. 1993)). Judge Jennemann of the Bankruptcy Court for the Middle District of Florida elaborated:

> He may "reaffirm" his agreement with the secured creditor to pay the prepetition debt, or "redeem" the collateral by paying the allowed secured claim amount in full. But, "[w]here the debtor decides not to reaffirm, or the parties cannot negotiate a reaffirmation, or redemption is not economically feasible, the debtor has but one option: 'surrender' the collateral."

*Id.* (*quoting In re Pratt*, 462 F.3d 14, 19 (1st Cir. 2006)); *see also In re Steinberg*, 447 B.R. 355, 357 (Bankr. S.D. Fla. 2011) ("In this circuit, a chapter 7 debtor has only three options with respect to property subject to a lien or mortgage: (1) surrender the property; (2) redeem the property; or (3) reaffirm the debt."). The Debtors agreed in the Stipulation of Facts that their proposed amendment to the Statement of Intention was ineffective and that they are obligated to surrender the Property. Accordingly, the issue before the Court is what the Debtors need to do in order to effectively surrender the Property pursuant to the Bankruptcy Code.

"Surrender," however, is not defined in 11 U.S.C. § 521(a)(2) or elsewhere in the Bankruptcy Code. *In re Plummer*, 513 B.R. at 142 (*citing In re Pratt*, 462 F.3d at 18 (1st Cir. 2006); *In re Cornejo*, 342 B.R. 834, 836 (Bankr. M.D. Fla. 2005)). "'Where the words in the statute are not defined terms, the court should look to their ordinary, dictionary-defined meaning.'" *Id.* (*quoting In re Ralston*, 400 B.R. 854, 860 (Bankr. M.D. Fla. 2009) (*citing Consolidated Bank, N.A. v. U.S. Dep't of the Treasury*, 118 F.3d 1461, 1464 (11th Cir. 1997) ("In the absence of a statutory definition of a term, we look to the common usage of words for their meaning.")). Black's Law Dictionary defines "surrender" as "[t]he act of yielding to another's power or control" or "[t]he giving up of a right or claim." Black's Law Dictionary 1581 (9th ed. 2009).

6

Furthermore, "[f]ew courts have examined 'surrender' in the context of § 521(a)(2)." *In re Plummer*, 513 B.R. at 142. Sections 521(a)(1) and (2) of the Bankruptcy Code do not state to whom a secured property should be surrendered. The Bankruptcy Court for the District of Columbia, in a case cited by the Debtors, noted that "[m]ost courts appear to assume that the surrender option entails a surrender to the lienholder, not to the trustee . . . ." *In re Kasper*, 309 B.R. 82, 85-86 (Bankr. D.D.C. 2004). Likewise, the Eleventh Circuit Court of Appeals stated in dicta that "[s]urrender provides that a debtor surrender the collateral to the lienholder who then disposes of it pursuant to the requirements of state law." *In re Taylor*, 3 F.3d at 1514.[3] Additionally, the First Circuit Court of Appeals, in *In re Pratt*, stated that "the most sensible connotation of 'surrender' . . . is that the debtor agreed to make the collateral available to the secured creditor-viz., to cede his possessory rights in the collateral." 462 F.3d at 18.

The Debtors, however, contend that they already surrendered the Property to the Trustee, Michael Bakst. The Debtors contend that the Trustee abandoned the Property and thus that it reverted back to them because they were restored to their pre-petition rights. The Debtors cite *In re Kasper* for the proposition that "surrender" should be to the Trustee. The *Kasper* court stated:

Viewed in isolation, the term "surrender" in § 521(2)(A) is at best

---

[3] Nonetheless, as the Bankruptcy Court for the Middle District of Florida observed, "[t]he footnote in *Taylor* notes debtor has the option to surrender but does not define the term surrender." *In re Cornejo*, 342 B.R. at 836. "Consequently, the Eleventh Circuit's dictum in *Taylor* provides little guidance." *In re Plummer*, 513 B.R. at 141-42 (*citing Edwards v. Prime, Inc.*, 602 F.3d 1276, 1298 (11th Cir. 2010) ("[D]icta is not binding on anyone for any purpose.")).

ambiguous. However, when § 521(2)(A) is read in the context of its companion provision, § 521(4), which requires that the debtor shall "surrender to the trustee all property of the estate," and of the lack of a clear congressional intention to alter nonbankruptcy law, § 521(2)(A)'s use of the term "surrender" plainly was not intended to mean turning over physical possession to the lienholder.

*In re Kasper*, 309 B.R. at 90.[4]

In contrast, CitiBank contends that it would be unfair to permit the Debtors to retain the Property for longer, if not permanently, while the Debtors contest the foreclosure action in the State Court. The Eleventh Circuit Court of Appeals stated:

> We recognize Congress intended the bankruptcy laws to provide a debtor a "fresh start" by allowing a debtor to discharge all dischargeable debts while retaining assets that are exempt. *See* 11 U.S.C. §§ 727 and 522, respectively. Allowing a debtor to retain property without reaffirming or redeeming gives the debtor not a "fresh start" but a "head start" since the debtor effectively converts his secured obligation from recourse to nonrecourse with no downside risk for failing to maintain or insure the lender's collateral. Section 521 mandates that a debtor who intends to retain secured property must specify an intention to redeem or reaffirm.

*In re Taylor*, 3 F.3d at 1516. Accordingly, as noted by Judge Kimball, "[u]nder *Taylor*, a debtor unwilling to reaffirm and unable to pay off the mortgage obligation is required to indicate an intent to surrender the home and to tender the property to the mortgagee." *In re Steinberg*, 447 B.R. at 358. Therefore, the Eleventh Circuit Court of Appeals seems to have rejected, at least in part, the approach taken by the

---

[4] The Eleventh Circuit Court of Appeals, however, seemingly does not agree with the *Kasper* court's interpretation that the Code is ambiguous. "The Eleventh Circuit holds that a debtor must comply with 11 U.S.C. § 521(2) because the statutory language is unambiguous and to be read literally and narrowly." *In re Jones*, 261 B.R. 479, 485-86 (Bankr. N.D. Ala. 2001) (*citing In re Taylor*, 3 F.3d 1512, 1516–17 (11th Cir. 1993)). "In *Taylor*, the Circuit Court specifically found that the statutory duties placed upon debtors are mandatory." *Id.*

8

Bankruptcy Court for the District of Columbia in *Kasper*. Essentially, if the Court determined that the Debtors already properly surrendered the Property to the Trustee, they would be effectively permitted to retain the Property, at least until a successful foreclosure action concludes, without redeeming the Property or reaffirming the Note. Furthermore, 11 U.S.C. § 521(a)(2) does not explicitly require the Debtors to surrender the Property "to the Trustee."

Both Judge Kimball and Judge Williamson in the neighboring Bankruptcy Court for the Middle District of Florida utilized the same approach in finding that a debtor may not state an intention to surrender while also contesting foreclosure in a state court. *See In re Cheryl L. Troutt*, Case No. 13-39869-BKC-EPK and *In re Luther Burnett, Jr.*, Case No. 13-12274-BKC-MGW. Judge Kimball, summarizing Judge Williamson's position in *Burnett*, stated:

> [Judge Williamson's] thought is that if the debtor files a bankruptcy case, and takes action in the case that shows an intent to surrender the property, that recognizes the lien and its validity, and gets an advantage through doing that, and then obtains a discharge, but the truth is that the debtor had no intention of giving up the property, and has filed the case in part for strategic reasons, that a discharge was obtained through fraud and should be revoked. And gives the debtor the chance to do the right thing, or have the Court reach the fairly obvious conclusion that discharge should be revoked. And that's why he entered that order.

*In re Cheryl L. Troutt*, Case No. 13-39869-BKC-EPK at ECF No. 31, Tr. p. 7, lines 2-14.

Likewise, the same issues of fairness considered by Judge Williamson in *Burnett* were also considered by Judge Kimball in *Troutt*. Judge Kimball summarized

9

the case before him:

> This is a case where the debtor was actively resisting a foreclosure action at the time that the petition was filed, and the petition was filed in December of 2013. The schedules filed in the case show that there was no equity in the property, and the debtor filed a statement of intention indicating a desire to surrender the subject property. The debtor, as a result, had the benefit of the additional wild card exemption under Florida Statute as it's implemented through the Bankruptcy Code and took advantage of the whole thing, thereby getting another $4,000 of exempt property, personal property.

*Id.* at Tr. p. 11, lines 14-25.

In *Troutt*, Judge Kimball reviewed the positions of other courts when faced with a similar set of facts in which a debtor has stated his intention to surrender a property:

> I think there are only two views, two views that I've seen and heard from other bankruptcy judges. One is that the debtor must take affirmative action to actually turn over the property. Lenders may not actually want that, by the way. And the other is, that the debtor cannot take action to impede the lawful course that would normally be pursued in State Court or elsewhere by the secured creditor.

*Id.* at Tr. at p. 12; lines 18-25. He then determined "that what surrender means is the debtor doesn't have to take affirmative action to physically deliver property to a lien holder, but the debtor cannot impede a creditor's efforts to take possession of its collateral by available legal means." *Id.* at Tr. p. 13, lines 13-17.[5] He elaborated:

---

[5] Judge Jennemann also took this approach in *In re Plummer*, she stated:

> Although we know what surrender does not require—turnover of physical possession—the definition of "surrender" in § 521(a)(2) is still murky. The common element appears to require a debtor to relinquish his rights in the collateral. When a debtor states his intent to surrender collateral under § 521(a)(2)(A), he complies with that intention, for purposes of § 521(a)(2)(B), when he allows the secured creditor (or in rare cases the Chapter 7 trustee) to obtain possession by available legal means without interference.

10

In this case the debtor admitted the validity of the debt and the mortgage, did not claim the property as exempt, and in fact, used the wild card exemption, thereby denying the estate administrable assets, all while having no intention of actually giving up the real property. If the debtor persists in refusing to surrender the property then the only conclusion the Court could reach is that the debtor obtained the discharge based on fraud, and so the discharge should be revoked. Even if this wasn't—even if the standard did not apply here, I would still rule that it's appropriate for the Court to threaten to revoke the discharge for the debtor's failure to live up to the statement of intentions and the duty under Section 521.

. . .

And so it's my view that it's proper for the Court to rule that failure to surrender will result in revocation of discharge.

*Id.* at Tr. p. 13, line 25; p. 14, lines 1-16; p. 15, lines 5-7.

Here, the facts are remarkably similar to those in *Troutt*. The Debtors have admitted the validity of the debt, did not claim the Property as exempt, and have benefitted from the "wildcard" exemption pursuant to Fla. Stat. § 222.25(4). Nevertheless, they wish to utilize affirmative defenses in the State Court and to contest the foreclosure. Moreover, they have not reaffirmed the Note or redeemed the Property. Accordingly, the Court agrees with the approach taken by Judge Kimball and Judge Williamson and determines that the Debtors must surrender the Property to CitiBank.

---

The debtor is not required to take any affirmative action to physically deliver the property. But the debtor cannot impede the creditor's efforts to take possession of its collateral by available legal means. If the debtor fails comply with his intention, courts have employed a variety of remedies, such as relief from stay, motions to compel compliance, and dismissal of the case under § 707(a).

*In re Plummer*, 513 B.R. at 143-44.

11

While the Debtors do not have to physically surrender the Property to CitiBank, they cannot continue to defend and/or contest the foreclosure in the State Court which is in effect resisting the surrender of the Property to CitiBank. The Debtors do not have an absolute "right" to defend in a foreclosure action because the Debtors explicitly admitted the validity of the debt and stated their intention before this Court to surrender the Property. The Bankruptcy Code provides:

> (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105. Consequently, if the Debtors persist in their refusal to "surrender" the Property pursuant to 11 U.S.C. § 521(a)(2), their discharge will be in jeopardy pursuant to 11 U.S.C. § 105. The Debtors' refusal to effectively surrender the Property to CitiBank could be considered not only a fraud on the Court, but also a violation of 11 U.S.C. § 521(a)(2)(B), which requires that "within 30 days after the first date set for the meeting of creditors under section 341(a), or within such additional time as the court, for cause, within such 30-day period fixes, perform his intention with respect to such property."

## III.    Conclusion

For the reasons described above, the Debtors' active defense of the foreclosure action in the State Court does not comport with the definition of "surrender" for purposes of the Bankruptcy Code. Therefore, the Debtors are not permitted to defend

or oppose the foreclosure and/or sale of the Property in the State Court because they swore under oath in this Court that they intended to surrender the Property and benefited from this declaration.

## ORDER

The Court, being fully advised in the premises and for the reasons discussed above, hereby **ORDERS AND ADJUDGES** that:

1. CitiBank's Motion to Compel Surrender is **GRANTED** to the extent set forth herein.

2. The Debtors shall cease all defense and/or opposition related to the foreclosure and/or sale of the Property in the State Court.

3. If the Debtors fail to abide by Paragraph 2 of this Order, CitiBank may file a motion with the Court requesting that the Court enter an order vacating the Debtors' discharge.

4. If CitiBank files a motion pursuant to Paragraph 2 of this Order and the Court finds that the Debtor failed to abide by Paragraph 2 of this Order, the Court may enter an order vacating the Debtors' discharge.

5. The Court reserves jurisdiction to enforce the provisions of this Order.

###

Copies Furnished To:

Michael E. Zapin, Esq.

13

Jonathan M. Sykes, Esq.

Michael R Bakst, Trustee

AUST



**ORDERED in the Southern District of Florida on April 13, 2015.**

Paul G. Hyman, Jr.
**Chief United States Bankruptcy Judge**

---

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA, WEST PALM BEACH DIVISION

IN RE:

EDWARD JOHN DOLAN and                             CASE NO.:   10-36036-PGH
LORI ANN DOLAN                                     CHAPTER 07

   Debtor(s)
_____/

### ORDER TO SHOW CAUSE WHY EDWARD JOHN DOLAN, LORI ANN DOLAN AND THE TICKTIN LAW GROUP, AS THE DEBTORS' AGENT,   SHOULD NOT BE SANCTIONED FOR VIOLATION OF 11 U.S.C.§ 521(a)(2)(B) AND SETTING <u>EVIDENTIARY HEARING ON APRIL 29, 2015 AT 1:00PM</u>

**THIS CAUSE** came before the Court on April 8, 2015 on Creditor's, **CARRINGTON**

**MORTGAGE SERVICES,** as servicer for Deutsche Bank National Trust Company as Indenture

Trustee for New Century Home Equity Loan Trust 2004-3, ("Creditor"), *Motion to Re-Open*

*Debtor's Bankruptcy, Compel Surrender of the Property Pursuant to §521(a)(2)(B) and for*

*Sanctions* [DE 26], the Court having heard argument from counsel for the Creditor, and counsel for

the Debtors, EDWARD JOHN DOLAN and LORI ANN DOLAN (collectively "Debtors"), and

for the reasons findings stated below the Court issues this Order to Show Cause why the Debtors

and their agent The Ticktin Law Group should not be sanctioned for violating 11 U.S.C.

1

§521(a)(2)(B) and their Statement of Intentions:

The Court **FINDS:**

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.   This is a core proceeding under 28 U.S.C. §§ 157(a)(2)(A) and (O).

2.      The Debtor filed this voluntary Chapter 7 proceeding on August 21, 2010.

3.      The Debtor listed the subject property, 5447 Twin Oaks Road, Lake Worth, FL 33463-6774 ("Subject Property") in Schedule A and D.   Within Schedule D the Debtors listed "Carrington Mortgage Se"(sic) as the Creditor for the Subject Property.

4.      The Subject Property was not claimed as exempt in Schedule C.   Additionally, in the Debtors' Statement of Intentions, the Debtors stated, under penalty of perjury, that the Subject Property would be surrendered to "Carrington Mortgage Se"(sic) and the Subject Property was not claimed as exempt.

5.      The Debtor received a discharge of this Debt on December 17, 2010.

6.      The record reflects that the Debtors retained The Ticktin Law Group ("Ticktin") to represent them in the underlying foreclosure action styled, *Deutsch Bank National Trust Company, as Indenture Trustee for New Century Home Equity Loan trust 2004-3 v. Lori Ann Dolan, et al.,* ("Foreclosure Action)" in the Fifteenth Circuit Court for Palm Beach County Florida, case number 2010-CA-017620.

7.      The record establishes that Ticktin is an agent of the Debtors. Specifically, the Debtors were represented by Joshua Bleil, Esq and Michael Vater, Esq, who are both currently Partners at Ticktin.

8.      The record reflects that the Debtors, through Ticktin, vigorously and intentionally contested the foreclosure action despite surrendering the property.  In fact, immediately after receiving a discharge the Debtors', through counsel, filed a Motion to Dismiss to Foreclosure

2

Action.

9.     The Debtors, through Ticktin, have continued to contest the Foreclosure Action.

10.     As this Court has previously held "if the debtor chooses to retain nonexempt collateral under § 521(a)(2), he only has two options: reaffirmation or redemption." *In re Plummer*, 513 B.R. 135, 141 (Bankr. M.D. Fla. 2014) (*citing Taylor v. AGE Fed. Credit Union (In re Taylor)*, 3 F.3d 1512 (11th Cir. 1993)). Judge Jennemann of the Bankruptcy Court for the Middle District of Florida elaborated:

> He may "reaffirm" his agreement with the secured creditor to pay the prepetition debt, or "redeem" the collateral by paying the allowed secured claim amount in full. But, "[w]here the debtor decides not to reaffirm, or the parties cannot negotiate a reaffirmation, or redemption is not economically feasible, the debtor has but one option: 'surrender' the collateral."

*Id.* (*quoting In re Pratt*, 462 F.3d 14, 19 (1st Cir. 2006)); *see also In re Steinberg*, 447 B.R. 355, 357 (Bankr. S.D. Fla. 2011) ("In this circuit, a chapter 7 debtor has only three options with respect to property subject to a lien or mortgage: (1) surrender the property; (2) redeem the property; or (3) reaffirm the debt.").

11.     With respect to a secured debt, section 521(a)(2) requires that a chapter 7 debtor surrender the collateral to the secured creditor absent a reaffirmation agreement or redemption of the collateral. *In re Taylor*, 3 F.3d 1512, 1516 (11th Cir. 1993); *In re Steinberg*, 447 B.R. 355, 358 (Bankr. S.D. Fla. 2011); *In re Linderman*, 435 B.R. 715, 718 (Bankr. M.D. Fla. 2009).

12.     The record establishes that the Debtors, through Ticktin, failed to comply with their Statement of Intentions and are violation of 11 U.S.C. §521(a)(2)(B) by contesting the Foreclosure Action from December 17, 2010 to present.

Therefore, it is **ORDERED:**

13.     The Debtors, EDWARD JOHN DOLAN and LORI ANN DOLAN, shall appear before this Court on **April 29, 2015 at 1:00pm** at the United States Bankruptcy Court, Flagler Waterview Building 1515 North Flagler Drive, Courtroom A, Room 801, West Palm Beach,

3

Florida 33401 to show cause why they should not be sanctioned for their failure to comply with their Statement of Intentions; and

      14.     Michael Vater, Esq. Partner of The Ticktin Law Group and Foreclosure Counsel for the Debtors, whose address is 600 West Hillsboro Boulevard, Suite 220 Deerfield Beach, Florida 33441 shall appear before this Court on **April 29, 2015 at 1:00pm** at the United States Bankruptcy Court, Flagler Waterview Building 1515 North Flagler Drive, Courtroom A, Room 801, West Palm Beach, Florida 33401 to show cause why he should not be sanctioned for counseling and assisting in the Debtors' failure to comply with their Statement of Intentions.

# # #

*Adam A. Diaz, Esq is directed to serve a copy of this Order on all interested parties and file a certificate of service with the Court within three (3) days of the entry of the Order.*

NOTHING IN THIS ORDER IS INTENDED TO OR SHALL IMPAIR THE DEBTOR'S
EQUITY OF REDEMPTION OR RIGHT TO OBJECT TO SALE UNDER APPROPRIATE
STATE LAW PROVISIONS.



**ORDERED in the Southern District of Florida on February 9, 2015.**

Laurel M. Isicoff, Judge
United States Bankruptcy Court

---

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

In re:                                                    Case No. 12-bk-20581-LMI

JORGE KRUGER,                                             Chapter 7

　　　Debtor.
_____/

### ORDER ON MOTION TO REOPEN BANKRUPTCY CASE

**THIS MATTER** came before the Court for hearing on February 2, 2015 at 2:30 p.m.

upon the Motion to Reopen Bankruptcy Case (Doc. No. 43) (the "Motion") filed by Wells Fargo

Bank, N.A., as Trustee, on Behalf of the Holders of the Harborview Mortgage Loan Trust

Mortgage Loan Pass-Through Certificates, Series 2006-12 ("Wells Fargo"), and for the reasons

stated on the record at the hearing, the Court orders as follows:

　　　1.　　　The Motion is granted in part and denied in part, to the extent provided herein.

　　　2.　　　The Debtor shall, within 14 days of the entry of this Order, withdraw his answer

and affirmative defenses, and any other paper filed in the Foreclosure Case,[1] that opposes,

---

[1] All capitalized terms are used as defined in the Motion, unless otherwise defined in this Order.

defends, or contests foreclosure of the Mortgage, or otherwise denies any material allegations of the Foreclosure Complaint, except that the Debtor may file an amended answer denying the allegation that Wells Fargo is the holder of the note that is the subject of the Foreclosure Complaint.

3.      The Debtor shall not defend or oppose the foreclosure and sale of the Property, including without limitation any action to obtain possession of the Property, except that the Debtor may contest whether Wells Fargo is the holder of the note that is the subject of the Foreclosure Complaint.

4.      If the Debtor fails to abide by paragraphs 2 and 3 of this Order, Wells Fargo may file a motion with the Court requesting any relief necessary or appropriate to compel compliance with this Order.

5.      The clerk shall re-open the above-captioned bankruptcy case for the purpose of entering this Order, and shall re-close the above-captioned bankruptcy case after twenty-eight (28) days after entry of this Order, unless a party files a motion requesting relief related to this Order.  The fee for filing any motion to re-open this case for the purpose of requesting relief related to the terms of this Order is hereby waived.

6.      The Court reserves jurisdiction to enforce or clarify the terms of this Order.

###

Jonathan Sykes, Esq., is directed to serve a copy of this Order on all interested parties and file a certificate of service with the Court.

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION

IN RE:

CARLOS A MONTALVO,              CASE NO.:   8:13-bk-02501-MGW
                                     CHAPTER 7

     Debtor(s).

_____/

## ORDER ON CREDITOR'S MOTION TO COMPEL

THIS MATTER came before the Court for hearing on February 26, 2015 at 9:30 a.m. upon the *Motion to Compel* [DE 24] pursuant to local rules 11 USC § 521(a)(2)(B) filed by, Creditor's, Federal National Mortgage Association, c/o Authorized Subservicer Seterus, Inc. ("Creditor"), for the reasons stated on the record, and being otherwise fully advised in the premises, the Court **FINDS**:

1.     The Debtor was required to either 1) reaffirm the debt, 2) redeem the collateral or 3) surrender the collateral to the Creditor in this bankruptcy proceeding.  *In re Taylor,* 3 F. 3d 1512 (11th Cir. 1993).

2.     The Debtor is required to perform his intention within the timeframe provided under 11 U.S.C. § 521(2)(B).  The Debtor failed to perform his statement of intention to affirm this debt with the Creditor.

Accordingly, it is **ORDERED** that:

3.     The Debtor shall, within 14 days of the entry of this Order, either enter into a reaffirmation agreement with the Creditor or amend his statement of intentions to surrender the Subject Property, 326 Briarton Drive, Davenport, FL 33897 ("Subject Property").

4.     If the Debtor surrenders the Subject Property, the Debtor shall cease all defense and/or opposition related to the foreclosure and/or sale of the Subject Property in the case styled

*Federal National Mortgage Association vs. Carlos A. Montalvo, et al.*, currently pending the in The Circuit Court in and for Polk County Florida, Case Number 2013-CA-004824.

      a.   If the Debtor fails to abide by paragraph 4 of this Order, the Creditor may file a Motion with the Court requesting that the Court enter an order vacating the Debtor's discharge.

5.     If the Debtor fails to reaffirm the debt or surrender the Subject Property, the Creditor shall provide notice to this Court. The Court will dismiss this bankruptcy proceeding *nunc pro tunc* and vacate the Debtor's discharge for failure to comply with 11 U.S.C. §521(2)(B).

6.     The Court reserves jurisdiction to enforce the provision of this Order.

**DONE** and **ORDERED** in Chambers at Tampa, Florida on     March 12, 2015    .

                       *M G Williamson*

_____
Hon. Michael G. Williamson
United States Bankruptcy Judge

Copies furnished to:
Adam A. Diaz, Esq.
SHD Legal Group, P.A.
P.O. Box 11438
Ft. Lauderdale, FL 33339-1438

Attorney Adam Diaz is directed to serve a copy of this Order on interested parties and to a proof of service within three days of the entry of this Order.

1440-139770
MJ

**UNITED STATED BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re:                                             Case No. 13-12274-MGW

**LUTHER BURNETT, JR.,**                           Chapter 7

      Debtor.

_____/

**ORDER GRANTING SECURED CREDITOR'S MOTION**
**TO COMPEL DEBTOR TO SURRENDER REAL PROPERTY**

THIS MATTER came before the Court for hearing on January 16, 2014 upon the

*Objection to Discharge and Motion to Compel Debtor to Surrender Real Property to Secured*

*Creditor Pursuant to Statement of Intention and Incorporated Memorandum of Law* [Doc. No.

17] (the "Motion") filed by Flagstar Bank, FSB ("Flagstar").

For the reasons stated on the record, and being otherwise fully advised in the premises, it

is **ORDERED** that:

1.      The Motion is GRANTED to the extent set forth herein.

2.      If otherwise appropriate, the Clerk may enter a discharge of Luther Burnett, Jr.

(the "Debtor").

3.      The Debtor shall cease all defense and/or opposition related to the foreclosure

and/or sale of the subject property[1] in the case styled *Flagstar Bank, FSB v. Luther W. Burnett,*

*Jr., el al.* currently pending in the Circuit Court of the Thirteenth Judicial Circuit in and for

Hillsborough County, Florida, Case No. 12-CA-012907.

---

[1] The street address of the subject property is: 11412 Flora Springs Drive, Riverview, Florida 33579. The legal description of the subject property is: Lot 17, Block 4, South Fork, Unit 8, as per plat thereof, recorded in Plat Book 109, Page 103-117, of the Public Records of Hillsborough County, Florida.

4.      If the Debtor fails to abide by Paragraph 3 of this Order, Flagstar may file a motion with the Court requesting that the Court enter an order vacating the Debtor's discharge.

5.      If Flagstar files a motion pursuant to Paragraph 4 of this Order and the Court finds that the Debtor failed to abide by Paragraph 3 of this Order, the Court will enter an order vacating the Debtor's discharge.

6.      The Court reserves jurisdiction to enforce the provisions of this Order.

**DONE** and **ORDERED** in Chambers at Tampa, Florida on _____January 21, 2014_____.

_____
Michael G. Williamson
United States Bankruptcy Judge

Copies furnished to:

Eric Pendergraft, Esq.
Burr & Forman LLP
450 East Las Olas Blvd., Suite 700
Fort Lauderdale, Florida 33301
E-Mail: ependergraft@burr.com
*Counsel for Flagstar*

Attorney Eric Pendergraft is directed to serve a copy of this Order on interested parties and to file a proof of service within three days of entry of the Order.



**ORDERED in the Southern District of Florida on September 9, 2014.**

Erik P. Kimball, Judge
United States Bankruptcy Court

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:                                          CASE NO. 13-39869-EPK
                                                CHAPTER 7
CHERYL L. TROUTT,

        Debtor.
_____/

## ORDER GRANTING MOTION TO COMPEL AND DENYING MOTION TO VACATE

THIS MATTER came before the Court for hearing on September 3, 2014 upon the

*Motion to Compel Surrender of Real Property* [ECF No. 23] (the "Motion to Compel") filed by

Select Portfolio Servicing, Inc. ("SPS"), as servicer for U.S. Bank N.A., as Trustee f/b/o

holders of Structured Asset Mortgage Investments II Inc., Bear Stearns ALT-A Trust 2006-

3, Mortgage Pass-Through Certificates, Series 2006-3, and certain mortgagors, and the

*Debtor's Motion to Vacate Discharge and Dismiss Chapter 7 Case with 180 Days Prejudice*

[ECF No. 26] (the "Motion to Vacate").    For the reasons stated on the record, it is

**ORDERED AND ADJUDGED** that:

    1.    The Motion to Vacate [ECF No. 26] is DENIED.

    2.    The Motion to Compel [ECF No. 23] is GRANTED as provided herein.

3.      Cheryl Troutt (the "Debtor") shall cease all defense and/or opposition related to the foreclosure and/or sale of the real property located at 2738 SE Birmingham Drive, Stuart, FL 34994 in case number 43-2009-CA-001563, pending in the Circuit Court of the Nineteenth Judicial Circuit, in and for Martin County, Florida.

4.      If the Debtor fails to abide by Paragraph 3 of this Order, SPS may file a motion with the Court requesting that the Court enter an order vacating the Debtor's discharge.

5.      If SPS files a motion pursuant to Paragraph 4 of this Order and the Court finds that the Debtor failed to abide by Paragraph 3 of this Order, the Court will enter an order vacating the Debtor's discharge.

6.      The Court reserves jurisdiction to enforce the provisions of this Order.

###

Copies furnished to:

Jonathan M. Sykes, Esq.

*Jonathan M. Sykes, Esq. is directed to serve a copy of this order on all appropriate parties and file a certificate of service.*

ORDERED.

**Dated:  May 13, 2015**

Michael G. Williamson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                                          Case No. 8:12-bk-16792-MGW
                                                                Chapter 13
Lisa Michelle Metzler,

      Debtor.

_____/

In re:                                                          Case No. 8:13-bk-09736-MGW
                                                                Chapter 7
Nootan Patel,

      Debtor.

_____/

<u>**MEMORANDUM OPINION ON SURRENDER**</u>

These two bankruptcy cases—one a chapter 7 and the other a chapter 13—present a

relatively novel question: how does a debtor surrender real property in bankruptcy? In the

chapter 7 case, the debtor failed to schedule real property that was subject to a state court

foreclosure action or file a statement of intentions under Bankruptcy Code § 521 indicating

whether she intended to retain or surrender the property. In the chapter 13 case, the debtor filed a

plan that proposed to surrender her homestead, which was also subject to a foreclosure action,

under Bankruptcy Code § 1325. But in both cases, the debtors actively defended the state court

foreclosure actions after they either received a discharge or surrendered their property. This

Court must decide whether actively opposing a state court foreclosure action is inconsistent with "surrendering" property.

At a minimum, "surrender" under Bankruptcy Code §§ 521 and 1325 means a debtor cannot take an overt act that impedes a secured creditor from foreclosing its interest in secured property. Although "surrender" is not defined in the Bankruptcy Code, the First and Fourth Circuits have interpreted that term to mean a debtor must relinquish any rights in the secured property—including the right of possession—and make it available to the secured creditor. Because those definitions accord with the dictionary definition of "surrender" and public policy, this Court agrees with the First and Fourth Circuits. By actively opposing the state court foreclosure actions, the debtors in these cases failed to "surrender" their property.

## Background

The facts in *In re Metzler* are straightforward: Before Lisa Metzler filed for chapter 13 bankruptcy, Wells Fargo sued in state court to foreclose its mortgage on her homestead. Debtors typically file chapter 13 bankruptcy to save their home. And in fact, that is what Metzler initially attempted to do. Her original chapter 13 plan provided for adequate protection payments and cure of $35,000 in prepetition arrearages.[1] Metzler, however, amended her plan three times.[2] Metzler's third amended chapter 13 plan, which the Court confirmed,[3] indicated that she intended to surrender her homestead.[4]

After the Court confirmed Metzler's third amended plan, Wells Fargo went back to state court to conclude its foreclosure action. But Metzler actively defended Wells Fargo's efforts to

---

[1] Metzler Doc. No. 2.

[2] Metzler Doc. Nos. 6, 7 & 30.

[3] Metzler Doc. No. 33.

[4] Metzler Doc. No. 30.

foreclose is mortgage. So Wells Fargo moved this Court for an order revoking its confirmation order.[5] Metzler explained her continued efforts to defend the foreclosure action even after she "surrendered" her property by claiming "surrender" merely means "to make the collateral available to the creditor *by dissolving the automatic stay*."[6]

The facts in *In re Patel* are more complicated: Nearly ten years ago, Nootan Patel bought property located at 5105 West Grace Street, Tampa, Florida, with a loan from Wells Fargo Bank, N.A.[7] Patel gave Wells Fargo a first mortgage on her property to secure her obligations on the loan. Patel eventually defaulted on the loan, and Wells Fargo sued to foreclose its mortgage.[8] Five years after Wells Fargo sued to foreclose its mortgage, Patel filed for chapter 7 bankruptcy.[9] But when she filed for bankruptcy, the Debtor failed to list the West Grace Street property on her schedules because she did not realize she still owned it.[10]

Apparently, Patel had originally taken title to the West Grace Street property in her name and her daughter's name as joint tenants with a right of survivorship.[11] At some point after Wells Fargo sued to foreclose its mortgage, Patel's daughter (Shree Patel) quitclaimed her interest in the property to Patel's ex-husband, which meant Patel actually owned the property with her ex-husband as tenants in common as of the petition date.[12] But it appears Patel believed her ex-

---

[5] Metzler Doc. No. 41.

[6] Metzler Doc. No. 46 (emphasis added).

[7] Patel Doc. No. 46-1.

[8] Patel Doc. No. 46 at ¶ 4.

[9] Patel Doc. No. 1.

[10] Patel Doc. No. 1 at Schedule A.

[11] Patel Doc. No. 46-2.

[12] Patel Doc. No. 46-4; Patel Doc. No. 49 at 6.

husband owned the house after the daughter quitclaimed her interest to him, so Patel listed the Wells Fargo debt on Schedule D and made a notation that the property securing that debt—i.e., the West Grace Street property—was the ex-husband's house.[13]

Because she did not believe she owned the West Grace Street property, Patel never filed a statement of intentions indicating whether she intended to reaffirm the mortgage debt, redeem the property, or surrender it.[14] And since the West Grace Street property was not scheduled, it was never administered by the chapter 7 trustee. Eventually, Patel received her chapter 7 discharge, and her bankruptcy case was closed.[15] After Patel received her discharge, U.S. Bank, which took assignment of the mortgage on the West Grace Street property, continued pursuing the foreclosure action originally filed by Wells Fargo.[16]

Unbeknownst to Patel, Mark Stopa (of the Stopa Law Firm) began defending the foreclosure action on behalf of Patel and her daughter.[17] For instance, Stopa filed an answer to the foreclosure complaint and asserted ten different affirmative defenses.[18] Stopa also filed a motion for summary judgment on behalf of Patel and her daughter seeking judgment as a matter of law because (i) U.S. Bank allegedly failed to give Patel and her daughter notice of their default under the mortgage and an opportunity to cure; and (ii) Wells Fargo allegedly failed to give Patel notice it was assigning her mortgage to U.S. Bank.[19] Stopa also filed an affidavit in

---

[13] Patel Doc. No. 1 at Schedule D.

[14] Patel Doc. No. 1.

[15] Patel Doc. No. 41.

[16] Patel Doc. No. 46 at ¶ 10.

[17] Patel Doc. No. 46-6; Patel Doc. No. 49 at 12-13.

[18] Patel Doc. No. 46-6 at 7-12.

[19] *Id.* at 21-22.

4

support of the summary judgment motion.[20] Contending a debtor must either reaffirm or redeem property he or she seeks to retain, U.S. Bank moved this Court to reopen Patel's bankruptcy case and compel her to surrender the West Grace Street property since she had neither reaffirmed the mortgage debt nor redeemed the property.[21]

## Conclusions of Law

A chapter 7 debtor has three options when it comes to secured property: the debtor can redeem the secured property, reaffirm the debt it secures, or surrender the secured property.[22] Bankruptcy Code § 521—titled "Debtor's duties"—expressly requires a chapter 7 debtor to file a statement of intentions indicating whether he or she intends to redeem secured property or reaffirm the debt it secures:

> [W]ithin thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, . . . [the debtor shall] file with the clerk a statement of his intention with respect to the retention or surrender of such [secured] property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property.[23]

A debtor must then perform his or her stated intention, generally within thirty days after the date first set for the meeting of creditors.[24] The Eleventh Circuit has interpreted § 521 to mean that a debtor cannot retain collateral unless he or she redeems it or reaffirms the debt it secures.[25]

---

[20] Based on Patel's testimony at an April 30, 2015 hearing on U.S. Bank's motion to reopen Patel's bankruptcy case and compel her to surrender the West Grace Street property, the Court finds that Patel (i) had not seen the affidavit Stopa filed in state court until receiving a copy from U.S. Bank's counsel; (ii) had no idea where the facts in it came from; (iii) had not signed the affidavit; and (iv) had not authorized Stopa to file it.

[21] Patel Doc. No. 46.

[22] *In re Plummer*, 513 B.R. 135, 141 (Bankr. M.D. Fla. 2014) (citing *Taylor v. AGE Fed. Credit Union (In re Taylor)*, 3 F.3d 1512 (11th Cir. 1993) and *In re Pratt*, 462 F.3d 14, 19 (1st Cir. 2006)).

[23] 11 U.S.C. § 521(a)(2)(A).

[24] 11 U.S.C. § 521(a)(2)(B).

The Bankruptcy Code imposes similar requirements on a chapter 13 debtor. A chapter 13 debtor is not required to file a statement of intentions. But a chapter 13 debtor is required to file a plan of reorganization indicating how he or she proposes to treat secured property. And Bankruptcy Code § 1325 only gives chapter 13 debtors three options for treating secured debt in a plan: gain the secured creditor's consent to the plan treatment, cram down the plan treatment over the secured creditor's objection, or surrender the secured property.[26] Under the cramdown option, the debtor is required to pay the secured creditor the total present value of the allowed secured claim over the life of the plan.[27] Absent consent from a secured creditor, then, a chapter 13 debtor cannot retain collateral without paying for it.[28]

In fact, neither Metzler nor Patel dispute that they cannot retain the collateral at issue without paying for it. As it turns out, Patel actually does not oppose foreclosure at all. Her lawyer apparently has been opposing the foreclosure action without her authorization. Metzler, however, does oppose foreclosure, but she contends the fact that she "surrendered" her homestead under the confirmed plan does not preclude her from defending Wells Fargo's foreclosure action.

So the issue really is what is "surrender" under the Bankruptcy Code. As Judge Jennemann observed in *In re Plummer*, the term "surrender" is "not defined in § 521(a)(2) or elsewhere in the Bankruptcy Code."[29] In attempting to define the term "surrender," the First Circuit Court of Appeals, in an opinion authored by former bankruptcy judge Conrad Cyr in *In re Pratt* almost nine years ago, observed that Congress purposely chose to use the term

---

[25] *In re Taylor*, 3 F.3d at 1516.

[26] 11 U.S.C. § 1325(a)(5)(A)-(C).

[27] 11 U.S.C. § 1325(a)(5)(B).

[28] 11 U.S.C. § 1325(a)(5)(C).

[29] 513 B.R. 135, 142 (Bankr. M.D. Fla. 2014).

"surrender" rather than "deliver" in § 521(a)(2).[30] Given that word choice, Judge Cyr reasoned that "'surrender' does not necessarily contemplate that the debtor physically have transferred the collateral to the secured creditor."[31] According to Judge Cyr, "surrender" means to make the property "available" to the secured creditor:

> Thus, the most sensible connotation of "surrender" in the present context is that the debtor agreed to make the collateral *available* to the secured creditor—*viz.*, to cede his possessory rights in the collateral—within 30 days of the filing of the notice of intention to surrender possession of the collateral.[32]

Less than a year after the First Circuit construed the term "surrender" in § 521 to mean to "make available," the Fourth Circuit, in *In re White*, construed it in the context of § 1325 in a similar fashion.[33] There, the Fourth Circuit relied on *Collier on Bankruptcy*, which has defined "surrender" in § 1325 "as the 'relinquishment of any rights in the collateral,' including the right to possess the collateral." The Fourth Circuit noted that the *Collier* definition was consistent with numerous other bankruptcy courts that have focused on the "complete relinquishment of rights." According to the Fourth Circuit, the relinquishment of rights is at the heart of "surrender":

> At the most basic level, then, the word "surrender" means the relinquishment of all rights in property, including the possessory right, even if such relinquishment does not always require immediate physical delivery of property to another.[34]

The Court agrees with the First and Fourth Circuits that surrender, at a minimum, requires a debtor to relinquish secured property and make it available to the secured creditor.

---

[30] *In re Pratt*, 462 F.3d 14, 18-19 (1st Cir. 2006).

[31] *Id.* at 18.

[32] *Id.* at 19.

[33] 487 F.3d 199, 205 (4th Cir. 2007).

[34] *Id.*

That does not mean, as Judge Jennemann noted in *In re Plummer*, that the debtor must "deliver" the property to the secured creditor.[35] For one, Congress did not require "delivery." For another, requiring the debtor to deliver property to the secured creditor could circumvent state law by allowing the secured creditor to bypass the foreclosure requirement.[36] In this context, this Court concludes that relinquishing property and making it available to the secured creditor—i.e., "surrendering" the property—means not taking an overt act to prevent the secured creditor from foreclosing its interest in the secured property.

Here, both Metzler and Patel plainly took overt acts to prevent Wells Fargo and U.S. Bank from foreclosing their mortgages. Patel filed an answer and affirmative defenses and even sought summary judgment in her favor. Of course, Patel can be forgiven for opposing the foreclosure action considering she apparently did not authorize her state court counsel to do so. Like Patel, Metzler actively defended Wells Fargo's foreclosure action, although unlike Patel, she did so intentionally apparently on the theory that "surrender" means something akin to simply dissolving the automatic stay without abrogating any state law rights the debtor may have.

But simply dissolving the automatic stay cannot be what "surrender" means because it would effectively permit the type of "ride through" that the Eleventh Circuit held was impermissible in *In re Taylor*.[37] The issue in *Taylor* was whether a chapter 7 debtor could retain possession of collateral property by staying current on his or her obligation to the secured creditor, but without reaffirming or redeeming the underlying debt. In bankruptcy parlance, this

---

[35] 513 B.R. 135, 143 (Bankr. M.D. Fla. 2014).

[36] *Id.*

[37] 3 F.3d 1512 (11th Cir. 1993).

is called a "ride through." The Eleventh Circuit held that the plain language of § 521 did not

provide for a ride-through option, and besides, permitting a "ride through" would give the debtor

a "head start"—not a "fresh start."[38] The Eleventh Circuit also reasoned that if a ride-through

option existed, it would render the other alternatives in § 521 "nugatory."[39]

 Under Metzler's definition of "surrender," a "ride through" would be permissible. After

all, "surrender" is complete, under Metzler's definition, the moment the automatic stay is lifted,

and the creditor is permitted to pursue its state court remedies. If that were the case, a debtor

could enjoy possession of the collateral indefinitely while hindering and prolonging the state

court process. Moreover, like the "ride through" at issue in *Taylor*, Metzler's definition of

surrender would also render the other alternatives in § 1325(a)—and § 521—of little value.

## Conclusion

 "Surrender" must mean something. In the context of Bankruptcy Code §§ 521 and 1325,

the Court concludes the term means that a debtor must relinquish secured property and make it

available to the secured creditor by refraining from taking any overt act that impedes a secured

creditor's ability to foreclose its interest in secured property. Because Metzler and Patel took

affirmative steps to oppose the state court foreclosure actions here, they failed to surrender their

property as required under Bankruptcy Code §§ 521 and 1325.[40]

---

Attorneys Hywel Leonard and Adam Diaz are directed to serve a copy of this order on interested
parties who are non-CM/ECF users and file a proof of service within 3 days of entry of the order.

---

[38] *Id.* at 1516.

[39] *Id.* at 1515 (quoting *In re Kennedy*, 137 B.R. 302, 304 (Bankr. E.D. Ark. 1992))(internal citations omitted).

[40] The Court has already entered an order on the motion to revoke Metzler's confirmation order (Metzler Doc. No. 52). The Court will enter a separate order granting the motion to compel Patel to surrender the West Grace Street property (Patel Doc. No. 46).

**Hywel Leonard, Esq.**
**Carlton Fields, P.A.**
*Counsel for Wells Fargo Bank N.A.*

**Kenneth R. Case, Esq.**
**Stopa Law Firm**
*Counsel for Lisa Michelle Metzler*

**Adam A. Diaz, Esq.**
**SHD Legal Group, P.A.**
*Counsel for U.S. Bank*

**David R. Singha, Esq.**
**David R. Singha, P.A.**
*Counsel for Nootan Patel*